**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **IN RE THE MARRIAGE OF** )<br>**IRIS LOOPER (now Skelly)**, )<br>            Petitioner, )<br>   and )<br>**JEFFREY BRANDON LOOPER**, )<br>            Respondent, )<br>   and, )<br> )<br>**UNITED STATES EX REL. THE** )<br>**DEFENSE FINANCE AND** )<br>**ACCOUNTING SERVICE, (DFAS) AND** )<br>**TERESA MCKAY, AS   DIRECTOR FOR** )<br>**DFAS,** )<br>          Garnishee. ) | Case No. :     CIV-14-313-D |

**PLAINTIFF'S OBJECTION TO THE**
**GARNISHEES' MOTION TO QUASH WITH SUPPORTING BRIEF**

**COMES NOW** the Plaintiff, Iris Looper, by and through counsel of record, Andrew P. Murphy, and objects to the Garnishee's Motion to Quash the Contempt Citation by attacking the underlying Income Assignment, in and for the following reasons, to-wit:

1.    The government lacks standing to raise any defense against the income assignment issued by State Court.  It is merely a stakeholder and must simply perform its obligation to pay.

2.    The Plaintiff, who is enforcing a private cause of action, has a statutory right to choose where the government is to send the income assignment payments.

**WHEREFORE** the above premises and the following Brief in Support considered, the Plaintiff prays that this Court sustain her objection, not Quash the Contempt Citation against the Garnishee, grant her attorney fees, costs and all other relief that this Court deems just and equitable.

**BRIEF IN SUPPORT**

**Summary of the Case**

On December 28, 2005, the Comanche County District Court, a court of competent jurisdiction, granted the parties a divorce. The Court ordered the Defendant, an active member of the United States Army (Exhibit No. 1), to pay child support for the parties' two (2) minor children. The Plaintiff now lives in Maryland and the Defendant in Kansas.

The Defendant failed to pay the child support so the Plaintiff filed a Motion for Judgment of Arrears, Income Withholding, Change of Payee Address, and Requirement for Payment of Bond in Comanche County District Court, Oklahoma. On January 15, 2014, the Honorable Mark R. Smith entered an Order for Judgment of Arrears, Income Withholding, Change of Payee Address, and Requirement for Payment of Bond ("Order") and issued an Income Assignment (or IWO[1]), against the Defendant. Exhibit Nos. 2 and 3. Judge Smith specifically found and ordered: that the Defendant owed a total arrearage of $58,807.56; that the Plaintiff may collect the arrearage by income assignment; that all payments were to be made payable to the Plaintiff and sent directly to her counsel's office. Exhibit Nos. 2 and 3.

The Garnishee is the Defense Finance and Accounting Service ("DFAS") and its Director, Teressa Mckay. DFAS is the agency that pays Army service members. It received a Court certified copy of the Order and the IWO on January 22, 2014. See Exhibit 4. DFAS chose not to honor both the Order and the IWO by taking the position that all payments must be sent to a State Disbursement Unit ("SDU") under 42 U.S.C. §666. See Exhibit No. 5.

---

[1]      The term "Income Assignment" is Oklahoma's term for an Income Withholding Order (hereinafter, "IWO").

The Oklahoma Department of Human Services ("OKDHS") is the single state agency designated to administer a statewide plan for child support.  56 O.S. §237(A). It is authorized, in accordance with Title IV, Part D, of the Federal Social Security Act, as amended, 42 U.S.C., §651 *et seq.*, to provide child support services.  Id.  In Oklahoma the SDU is the Centralized Support Registry ("CSR") run by OKDHS.  43 O.S. §413.  The Plaintiff must pay the CSR a fee for its involvement.  42 U.S.C. §657(a)(4); 56 O.S. §237(F);  Exhibit No. 6.

The Plaintiff sent a letter to DFAS explaining that this was not a 42 U.S.C. §666 case.  She has never received State assistance in accordance with a state plan.  Therefore she did not have to go through, and the government could not force her to go through, the CSR to enforce her private cause for collecting the child support that the Defendant owed.   See Exhibit No. 7.

DFAS ignored the letter.  Consequently, the Plaintiff Applied for a Contempt Citation..  The State Court issued the Citation against DFAS and its Director, Teresa McKay, on March 4, 2014.

The Plaintiff served the Citation on the Garnishee in accordance with 12 O.S. §2004 on March 10, 11 and 18, 2014.  On April 1, 2014, the United States removed the action from State Court, allegedly pursuant to 28 U.S.C. §1442(a)(1).

On April 4, 2014, the Garnishee filed a Motion to Quash to attach the IWO, but changed the authority for its argument.  Now it alleged that 43 O.S. §413 requires all IWO payments be sent to the State CSR and 42 U.S.C. §666 supports its position.  Motion to Quash at 3 - 4.

On April 8, 2014, the Plaintiff filed her Motion to Remand the case back to State Court.  That Motion is still pending.

## The Issues and the Plaintiff's Position

The issue is whether the Plaintiff has a choice to ask the State court to order IWO payments of child support arrearage to be sent directly to her instead of to the CSR where she would have to pay a fee. The Plaintiff's position is yes she can. She has a choice whether or not to go through the CSR. That choice is expressly provided by statute. However, before reaching this issue, the government must first show that it has standing to question the IWO once served. Federal and State law are clear, the government lacks standing because it is a mere stakeholder, nothing more.

## PROPOSITION I
### The Government Has No Standing to
### Contest the IWO as It Is a Mere Stakeholder

A federal court has already determined directly and on point that DFAS has no standing to contest the IWO's validity.

> If the fact and amount of the government's debt to the defendant is not challenged, **the garnishee has no further liability and is no longer interested in the litigation. At this point, the only question which would arise in the case would concern the basis of the garnishment, a domestic relations type of issue not appropriate for resolution by this court.** (Citation omitted).

*West v. West* 402 F.Supp. 1189, 1192 (N.D. Ga. 1975). In *West*, the Plaintiffs filed suit in Fulton County Civil Court for moneys owed to their former husbands by the U.S. Department of the Army and its finance center, now DFAS. *West*, 402 F.Supp. at 1190. The government removed it to federal court. The Court remanded the case back to state court because the Army had no liability, thus no standing to contest the IWO.

### A.    Only the Defendant Can Contest the IWO

The third party employer (i.e. the government), directly lacks standing to raise any defense on behalf of any employee. The Uniform Interstate Family Support Act (2001) ("UIFSA"), and

Oklahoma law state specifically that only:  "[a]n obligor may contest the validity or enforcement of an income-withholding order issued in another state."  E.g., UIFSA §506; 43 O.S. §601-506; see also K.S. §23-3125.   The creators of UIFSA have provided direct comments regarding how UIFSA is to be interpreted and implemented:   "It is the responsibility of the employee to take whatever protective measures are necessary to prevent the withholding if the employee asserts a defense as provided in Section 506, *infra*."  UIFSA §502 Comments.  In *West*, the court clarified with great specificity that the Army finance center directly lacked standing as a third party employer to raise any defense because it had no interest in the litigation.  *West,* 402 F.Supp., at 1192.  Consequently, only the Defendant has standing to contest the IWO under UIFSA and State law.

### B.   The Government's Simple Obligation Is to Pay, Not Redirect Payment

On the other hand, the government has a simple obligation once an individual serves it the IWO.  The obligation is to comply with the legal process (i.e. to pay in accordance with the IWO).   Pursuant to 42 U.S.C. §659(a): "Notwithstanding any other provision of law . . . moneys . . . payable by the United States to any individual, including members of the Armed Forces . . . **shall be subject**, in like manner and to the same extent as if the U.S. were a private person, . . . **to any other legal process brought** . . . **by an individual obligee, to enforce the legal obligation of the individual to provide child support**."  *Loftin v. Rush,* 767 F.2d 800, 806 (11th Cir. 1985), *abrogated on other grounds by Ariail Drug Co. v. Recomm Int'l Display, Inc.*, 122 F.3d 930, 933 (11th Cir. 1997).  *Loftin* interprets §659 to mean:

> The government is under **obligation to comply with "legal process."** Legal process: means any writ, order, summons, or other similar process in the nature of garnishment, which--(1) is issued by ... a court of competent jurisdiction ... and (2) is directed to ... a governmental entity, which holds moneys which are otherwise

payable to an individual, to make a payment from such moneys to another party [to satisfy a legal obligation . . . to provide child support or ... alimony]. . . . " *Id.*, at 807 (emphasis added)( " [ ]" brackets in original).

The employer's obligations are extremely limited. "Except as otherwise provided in subsection D of this section and Section 601-503 of this title, the employer **shall withhold and distribute the funds as directed in the withholding order by complying with the terms of the order which specify: 2. The person designated to receive payments <u>and the address to which the payments are to be forwarded</u>.**" 43 O.S. §601-502( C)(2) (Emphasis added). These obligations are binding on the government. 12 O.S. §1171.3(B)(4); K.S. §23-3104(a).

Similarly, 5 C.F.R. §581.301 regulates the government's obligation: "Upon proper service of legal process, together with all supplementary documents and information as required by §§581.202 and 581.203, **the head of the governmental entity** [Teresa McKay] or his/her designee, shall identify the obligor to whom that governmental entity holds moneys due and payable as remuneration for employment and shall suspend, i.e., withhold, payment of such moneys for the amount necessary to permit compliance with the legal process in accordance with this part."

The government is not authorized to redirect payments. The creators of UIFSA comment to §502 informs us that **no entity is authorized to cause any redirection**:

> Subsection (c)(2) states the obvious: information necessary for compliance must be clearly stated. For example, **the destination of the payments must correspond to the destination originally designated or subsequently authorized by the issuing tribunal**, such as by the redirection of payments pursuant to Section 319, *supra*. Absent such action by the issuing tribunal, **no redirection by any** support enforcement agency or other person or **entity is authorized** by this section. (Emphasis added).

From a logical standpoint, there is no federal or State statute that permits employers to dishonor a withholding order if the non-Title IV-D obligee desires to have payments sent to an

-6-

address of their choosing.  UIFSA governs Notice of Withholding issues and there is nothing in it that would authorize such a position or prohibit an obligee-parent from choosing "where" payments are to be mailed.  Once directed to make payment, the third party employer has a simple obligation to pay with no choice but to make the payment as directed in the IWO.

### C.    The Government Is a Mere Stakeholder

In *Popple v. U.S.*, 416 F.Supp. 1227 (W.D. N.Y. 1976), the ex-wife served the government a garnishment summons pursuant to 42 U.S.C. §659 to collect her court awarded portion of her ex-husband's retirement pay possessed by the government.  The government stated clearly that it was merely a stakeholder in the action as a garnishee.  It also stated that the Plaintiff should have brought the action in Georgia state court.  *Id.*, at 1228.  The *Popple* court agreed and dismissed the case.  *Id.* The facts are on point here.  The Plaintiff served the government with legal process to collect the arrearage from the Defendant's pay.  Just as in *Popple*, the government stands merely as a stakeholder.

The government, as garnishee, has no interest other than to perform its obligation to pay as directed.  Its failure to perform as ordered gives rise to the Contempt Citation here.  Congress has expressly waived sovereign immunity under the limited instance of collecting child support.  42 U.S.C. §659.  What differences does it make to the government whether it send the payments directly to the individual as ordered or to an SDU?  It is merely a stakeholder.

In sum,  the Plaintiff served legal process on DFAS to enforce the Defendant's child support obligation.  The Order and the IWO remain enforceable and order the government to send the IWO payments directly to the Plaintiff by way of her counsel's office.  Only the obligee has standing to contest the IWO.  UIFSA specifically comments that no entity is authorized to redirect the payments.

The government's only interest is to comply as ordered.  Consequently, the government lacks standing to contest the IWO as it is a mere stakeholder.

**Proposition II**
**The Plaintiff, Who Is Enforcing a Private Cause of Action, Has a Statutory**
**Right to Choose Where the Government Is to Send the Income Assignment Payments**

The Plaintiff seeks to enforce the judgment she received from her divorce case, a completely private cause of action.  As such, she is a creditor.  Title 12 O.S. §1171(A) provides that: "**Any creditor shall be entitled** to proceed by garnishment in any court having jurisdiction against any person who shall be indebted to the creditor's debtor . . .  in the cases, upon the conditions, and in the manner described by law."  Judge Smith had no choice but to enter an Order for the income assignment (IWO) and then issue it:

> In all child support cases arising out of an action for divorce, paternity or other proceeding in which services are not being provided under the state child support plan, the district court shall order the wage of the obligor subject to immediate income assignment, regardless of whether support payments by such parent are in arrears. 43 O.S. §115(B).

The issue is whether the Plaintiff had the right to ask the State court to order the payments be sent directly to her.  Title 43 O.S. §413( C) gave her that right.

**A.    Statutory Interpretation Completely Supports the**
**Plaintiff's Right to Choose Where Payments Should Be Sent**

Title 43 O.S. §413( C) provides the Plaintiff a right to choose.  It states: "**Any party _desiring_** child support, . . .  or related support payments to be paid through the Registry **_may request_ the court to order the payments to be made through the Registry**. Upon such request the court shall order payments to be made through the Registry."  (Emphasis added).  The logical corollary is: if a party does not desire support payments to be paid through the Registry, then that party may request

the Court not to order payments to be made through the Registry.  All a party need to do is express

its desire, one way or the other.  That makes perfect sense when reading the preceding provision in

§413(B) which states: "when child support enforcement services are being provided under Section

237 of Title 56 of the Oklahoma Statutes, all monies owed for child support shall continue to be paid

through the Registry until child support is no longer owed."  Consequently, §413( C) provides the

Plaintiff a right to choose.

In opposition to this logic, the government takes the first two sentences and the words "as

follows" of §413(A) out of context.  Section 413(A) defines the scope of OKDHS' authority so that

it can receive, allocate and distribute any type of support payment that it actually receives, not that

all payments must go through the Registry.  Reading §413(A) in its entirety resolves the issue:

> The Department of Human Services shall maintain a Centralized Support Registry
> to receive, allocate and distribute support payments. All child support, spousal
> support, and related support payments shall be paid through the Registry as follows:
> 1. In all cases in which child support services are being provided under the state child
> support plan as provided under Section 237 of Title 56 of the Oklahoma Statutes; and
> 2. In all other cases in which support is being paid by income withholding.

In light of §413(C), any other meaning would be illogical, obliterate the need to have §413( C) and

the Plaintiff's right to express its desire.  Thus, the government has taken §413(A) out of context.

**B.    Statutory Interpretation Renders
the Government's Position Untenable**

As a general rule of statutory interpretation in Oklahoma, the Court must harmonize and

reconcile §413(A) with §413(C) in such a way that gives effect to both sections.  *E.g., Harrison v.

Morgan*, 191 P.3d 617, 624, 2008 OK CIV APP 68 (Okla. Civ. App. 2008);  *In the Matter of the

Estate of Pope* 733 P.2d 396, 399, 1986 OK 72 (Okla, 1986) ("In the construction of statutes,

harmony, not confusion, is to be sought").  The best way to harmonize these sections is to first

recognize the clue provided by the legislature in the statute's title. The title informs us that the statute provides a procedure when payments are actually made to the registry: "Payments Made Through the Registry - Procedure - Change of Address - Service of Process."

Interpreting §413(A) as the defining provision that authorizes the CSR to handle all situations when support payments go through it harmonizes and gives both §413(A) and §413(C) effect. Part (A) authorizes the Registry to receive, allocate and distribute all kinds of child support payments that the Court ordered to be paid through it. Under §413(C), the state legislature gave the obligee a choice to utilize the CSR or not utilize it based upon the obligee's individual desire and request.

Recognizing the obligee's right to choose and the court's inherent decision making authority, the Oklahoma legislature expressly stated in 43 O.S. §601-502(C) that an employer "shall distribute the funds **as directed in the withholding order.**" (Emphasis added). If the legislature wanted to state that an employer "shall distribute the funds **only to the CSR**," then it could have easily stated it and omitted §413(A)(i), §413(A)(ii) and §413( C). Consequently, the government's interpretation is untenable because it does not harmonize and give effect to both §413(A) and §413(C).

### B.    The Plaintiff's Right to Choose

A custodial parent has the statutory right to enforce the IWO. UIFSA §507; 43 O.S. §601-507(A). When the custodial parent enforces the IWO in a private cause of action ("non" Title IV-D case), it may desire that the collected payments be sent to a friend, relative, attorney/agent or to a bank. It is the custodial parent's choice "where" they want their collected payments on a non Title IV-D case sent because the State has no interest. In the non Title IV-D case, the custodial parent has never sought out assistant or enforcement under a State plan. The custodial parent has exercised its right and chose to enforce its private cause of action without State assistance. As such, they cannot

-10-

be "forced" to do business with a governmental Title IV-D entity or be forced to have payments handled, (and fees taken out of their collected funds), by that governmental entity.

Congress has directly recognized this fact in 42 U.S.C. §659 which incorporates the idea of choice.  Section 659 both waives the government's sovereign immunity and provides the individual obligee the right to enforce the obligor's child support obligation on their own: "[M]oneys payable by the United States . . to any individual, including members of the Armed Forces of the United States, **shall be subject to any other legal process brought**, by a State agency administering a program under a State plan . . . or **by an individual obligee, to enforce the legal obligation of the individual to provide child support** . . . ."  Emphasis added.

> The term 'legal process' means any writ, order, summons, or other similar process in the nature of garnishment (A) which is issued (i) a court . . . of competent jurisdiction in any State . . . (B) which is directed to, and the purpose of which is to compel, a governmental entity which holds moneys which are otherwise payable to an individual to make a payment from moneys to another party in order to satisfy a legal obligation of the individual to provide child support . . . . 42 U.S.C.§659(i)(4).

Any custodial parent not currently receiving State assistance can "fire" or "terminate" any Title IV-D agency and/or any Title IV-D involvement.  Under specific federal law (45 C.F.R. 303.11(b)(8)) , custodial parents have the right and ability to terminate the services of any IV-D office involvement which necessarily includes the Oklahoma CSR.  The custodial parent cannot be "forced" to do business with a governmental Title IV-D entity.

Under UIFSA and Oklahoma law, the obligee has the statutory right to choose either a State agency for enforcement or use a private attorney who has all the same rights as a Title IV-D office via a Judge's order.  ("An individual may employ private counsel to represent the individual in proceedings authorized by this Act").  UIFSA §309; 43 O.S. §601-309.  This is because UIFSA

incorporates two (2) types of procedures: "Administrative," where the State Title IV-D agency is in charge but has little or no decision making authority (UIFSA §507) and must strictly follow its authorizing and procedural statutes, and "Judicial," where a Judge has full decision making authority and utilize his inherent discretion. The bottom line is that Congress recognized the individual's right to chose where payments should be sent.

### C.     The Government's Position Does Violence to E.O. 12953

In Executive Order No. 12953 at §203, President William J. Clinton stated that: "Child support actions . . . **are not limited to actions brought on behalf of the state or [an] individual by state agencies providing services** . . . ." He recognized that the individual obligee can also bring a private cause of action. The government's position violates the E.O. because it limits actions to only those brought by the State or an individual by State agency even though President Clinton recognized the obligee's private cause.

President Clinton also required: "**all Federal agencies**, including the Uniformed Services, **to cooperate fully in efforts to . . . enforce collection of child** and medical support **in all situations** where such actions may be required." Id., §101 (emphasis added). DFAS and its Director have chosen not to honor the State court Order and IWO. As such, they unquestionably do violence against E.O. 12953.

### D.     The Court Has Authority to Direct Payments

The government might argue that the State court lacks authority to direct payments to a place other than the CSR. However, not only does §413( C) provide the authority based on the obligee's desire (*supra*), but the Court has the authority pursuant to 43 O.S. §601-502( C)(2): "The employer shall withhold and distribute the funds **as directed** in the withholding order by complying with the

-12-

terms of the order which specify: **the person designated to receive payments and the address to which the payments are to be forwarded**." (Emphasis added). Again, UIFSA supports two (2) types of procedure:  Administrative where the State Title IV-D agency is in charge with little or no decision making authority and Judicial where a Judge has full decision making authority.  Therefore, the Court has authority to direct payments.

**E.     The Government's Reliance on**
***Arlington* Is Easily Distinguished**

The government relies heavily on the case of *Arlington v. Helms*, 438 F.3d 1336 (11th Cir. 2006), for the rule that: "in child support cases involving an income withholding order, non-TANF custodial parents' child support payments must flow through the SDU." *Arlington,* 438 F.3d at 1339. There are almost too many differences to discuss:

In *dicta* this non-binding precedent court stated that all IWO's must be paid through an SDU. When it made that statement, it was describing what it understood to be the procedure of IWO's under the federal scheme in 42 U.S.C. §666.  *Id.*  This is not a §666 case.  (*Infra* at p 14, F. *Arlington* Does Not Apply).

In *Arlington,* the court was faced with the issue of whether 42 U.S.C. §657 created an individual right giving rise to a §1983 action, not whether all IWO payments must go through an SDU.  *Arlington* 438 F.3d at 1336.

The 11th Circuit completely missed the individual's rights under 42 U.S.C. §659(a) because no party raised that issue.

-13-

*Arlington* involved Alabama parties.  The *Arlington* Court never addressed Ala. Code 1997 §30-3-61(a)) where IWO payments may be sent to a "designee."   Oklahoma has a similar statute. 56 O.S. §237(C)(3).[2]  Thus, *Arlington* is easily distinguished.

### F.   *Arlington* Does Not Apply

*Arlington* does not apply because 42 U.S.C. §666 does not apply.  *Arlington's* dicta talked about TANF and §666.  However, it never addressed the scope of §666.  Section 666 applies only to cases under "a State Plan" (§666(a)(1)(A)), or cases being "enforced under a state plan," (§666(b)). The Plaintiff is not within §666's scope.  The Plaintiff is not and has not received State assistance or TANF.  The Plaintiff exercised her statutory right to choose pursuant to 43 O.S. §413( C).  She hired her own private counsel pursuant to 43 O.S. §601-309.  As authorized by 42 U.S.C. §659, the Plaintiff served legal process on the government to enforce her private cause of action and the Defendant's obligation to pay her the arrearage.  *Arlington* simply does not apply.

### G.   The Government's Reliance on *Arlington* Violates Logic

Federal law recognizes the Plaintiff's right to prosecute her own case in 45 C.F.R. §303.11(a)(8).  This section provides a system for closing the SDU case in non-IV cases.  To do so: "A recipient of services requests closure of a case and there is no assignment to the State . . . of arrearages which accrued under a support order."  If the obligee must always utilize State assistance to enforce and receive payments as stated in *Arlington*, but the obligee chooses not to under the C.F.R., then the operation of the government's position requires the conclusion that the obligee has

---

[2]    56 O.S. §237(C)(3) states: "If a court has ordered support payments to be made to the recipient or to the applicant, the Department [OKDHS] may send a notice of the assignment or application to the obligor requiring that all support payments be made to the Division or its designee."  Nothing prevents the Court from ordering that the payments be sent to the obligee as the Departments designee.

waived its right to child support arrearage because the obligee can only receive it by going through the SDU.  That idea is illogical and forces the obligee into a Catch-22 situation.

On the one hand, before an obligee can receive state enforcement assistance to collect an arrearage, it must first assign its rights to child support over to the State and then the State will begin enforcement procedures.  56 O.S. 237(C)(3)(d).  On the other hand, if the government and *Arlington* are correct, but the obligee exercises its right to terminate its relationship with the State CSR, then the obligee has no right to ask a Court to order the employer to send the payments directly to the obligee.  That forces the obligee to waive its right to child support.  Furthermore, if the government and *Arlington* are correct, then the Court has no judicial decision making authority to correct this Catch-22.  Therefore, the government's reliance on *Arlington* leads to an illogical result.

In sum, the Plaintiff has a statutory right to choose were the child support arrearage payments are to be sent.  Title 43, Section §413( C) and statutory interpretation support this right.  State Court has the authority to direct child support payments to an SDU or as the Obligee desires.  *Arlington* is easily distinguished and it does not apply. Moreover, the government's reliance on *Arlington* creates an illogical result.

## CONCLUSION

The government lacks standing to quash the Contempt Citation by attacking the IWO because it is merely a stakeholder and must simply perform its obligation to pay.  The Plaintiff, who is enforcing a private cause of action and having never received State assistance, has a statutory right to choose where the government is to send the income assignment payments.

Respectfully submitted,


/s/_____
ANDREW P. MURPHY, OBA #16702
Andrew P. Murphy, Attorney at Law, P.C.
3601 N. Classen Blvd., Suite 106
Oklahoma City, OK.  73118
Tel:405.524.5155 • Fax:405.524.5355
ANDREW@ANDREWPMURPHY.COM


**EXHIBITS:**

1 - Service Members Civil Relief Act Affidavit
2 - Order For Judgment of Arrrears, Income Withholding, Change of Payee Address, and
       Requirement for Payment of Bond
3 - Income Assignment/IWO
4 - Affidavit for Service by Attorney (IWO and Order)
5 - Letter from DFAS to Counsel
6 - OK DHS CSR Fee Internet Information Page
7 - Letter to DFAS from Counsel

*Certificate of Service*

☒     I certify that on April 3, 2014, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing.  Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:  Robert A. Bradford, Assistant U.S. Attorney.


☒     I certify that on April 3, 2014, I served the attached document by first class mail on the following:


     Jeffrey B. Looper
     1518 Pawnee St.
     Ft. Leavenworth, KS   66048


/s/_____
Andrew P. Murphy